## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

EVANSTON INSURANCE COMPANY

VERSUS

FOREST OIL CORPORATION, ET AL.

CIVIL ACTION NO. 5:13-cv-00238

JUDGE ELIZABETH E. FOOTE

MAGISTRATE JUDGE MARK L. HORNSBY

### MEMORANDUM RULING

Before the Court is a motion for summary judgment by the Plaintiff, Evanston Insurance Company ("Evanston"), seeking a ruling by the Court that it does not have a duty to defend or indemnify its insureds, Arkla Tex Gyro Services, LLC and Justin Hoops (collectively, "Arklatex").[1] For the reasons stated herein, Evanston's motion for summary judgment will be **GRANTED in part** and **DENIED in part**.

## I.     Factual and Procedural Background

On July 10, 2006, Rubert and Judith Madden ("the Maddens") executed an oil, gas and mineral lease in favor of EnSight III Energy Partners, LP ("EnSight") covering a 479 acre tract of land located in Sections 17, 18, 19 and 20, Township 14 North, Range 9 West, Red River Parish, Louisiana (the "subject lease"). The subject lease was assigned by EnSight to Forest Oil Corporation ("Forest Oil") on March 1, 2008.[2] The Madden 17-01H Well (the

---

[1]Record Document 87.

[2]Record Document 87-5, ¶¶ 5-7.

"Madden 17 well"), which encompassed their property, was spud on April 21, 2010 and began to produce gas on August 1, 2010.[3]

On December 1, 2011, Forest Oil obtained a surface and subsurface lease from the Maddens, giving it the right to utilize the surface of the Madden's property to drill a directional well to adjoining properties for the purpose of producing oil and gas from properties not owned by the Maddens.[4] Before Forest Oil began the process of drilling the Madden 20-01H well (the "Madden 20 well") on the surface of the Maddens' property, it hired Arklatex to conduct a gyroscopic survey from a depth of 0 feet to 10,560 feet on the Madden 17 well.[5] During the relevant time period, Evanston Insurance Company ("Evanston") provided a Professional Liability Coverage policy to Arklatex,[6] and St. Paul Fire and Marine Insurance Company ("St. Paul") provided a multi-form policy to Arklatex.[7]

On March 19, 2012, as Forest Oil began to drill the Madden 20 well, the wellbore of the Madden 20 well encountered the wellbore of the producing Madden 17 well, causing a collision.[8] The Madden 17 well has not produced gas since the collision.[9]

---

[3]Record Document 87-1, p. 2.

[4]Record Document 87-3, Ex. 2.

[5]Record Document 1, p. 3.

[6]Record Document 87-1, p. 3.

[7]Record Document 90, p. 2.

[8]Id.

[9]Id.

The Maddens filed a lawsuit against Forest Oil and Arklatex in the 39th Judicial District Court of Red River Parish, Louisiana, seeking to cancel the subject lease and the surface lease, as well as the recovery of damages.[10] Forest Oil filed an answer to the Madden's state court suit and issued a third-party demand against Arklatex.[11] Forest Oil contends that the survey conducted by Arklatex was incorrect, and that although it drilled the Madden 20 well within its designated trajectory, the error in Arklatex's survey caused the damage from the contact between the two wells.[12] Forest Oil seeks the following damages in the state court suit:

    (1)    Additional costs incurred in the drilling and completion of the Madden 20-01H Well as a result of the collision;

    (2)    Diagnostic work incurred on the Madden 17-01H Well as a result of the collision; and

    (3)    The estimated costs to repair the Madden 17-01H Well and return it to production.[13]

Forest Oil also requests damages "in any amounts for which it may be cast in judgment to the Plaintiffs in the principal demand and all damages which may result from a judicial cancellation of the Surface Lease, and/or the subject oil, gas and mineral lease."[14]

---

[10] Record Document 87-1, p. 2.

[11] Record Document 87-1, p. 3.

[12] Id.

[13] Record Document 87-4, Ex. 3, p. 5.

[14] Id.

Evanston filed the instant suit seeking a declaratory judgment against Forest Oil, the Maddens, and Arklatex.[15]  Evanston argues that, based on the policy language, it has no duty to defend or indemnify Arklatex for the claims made by the Maddens or Forest Oil in the state court suit.

Arklatex joined St. Paul as a third party Defendant.[16] St. Paul answered the complaint and counterclaimed Arklatex, Forest Oil, and the Maddens.[17] Evanston filed the instant motion for summary judgment,[18] which was opposed by St. Paul,[19] Forest Oil,[20] and St. Paul.[21]

## II.    Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  Rule 56(c) "mandates the

---

[15]Record Document 1.

[16]Record Document 37.

[17]Record Document 44.

[18]Record Document 87.

[19]Record Document 90.

[20]Record Document 91. The Court notes that the Maddens have not responded to the motion for summary judgment.

[21]Record Document 109.

Page 4

entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).  While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075,  Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant.  Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

As this case is before the Court under diversity jurisdiction, the Court must apply the substantive law of the forum state.  Bradley v. Allstate Ins. Co., 620 F.3d 509, 517 n.2 (5th Cir. 2010) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)).  The Fifth Circuit in In re Katrina Canal Breaches Litigation stated the appropriate methodology for a federal court sitting in diversity in Louisiana to apply:

> To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court.  In the absence of a final decision by the Louisiana Supreme Court, we must make an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case.  In

Page 5

> making an *Erie* guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes. Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana. Thus, although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them.

495 F.3d 191, 206 (5th Cir. 2007) (citations and internal quotation marks omitted).

## III.   Law and Analysis

Evanston argues that the language contained in its policy excludes coverage for Arklatex for damages related to the collision of the Madden 20 well and the Madden 17 well, and thus, it has no duty to defend or indemnify Arklatex in the state court suit. Specifically, Evanston's Professional Services Liability policy contains the following language:

INSURING AGREEMENT

A. The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 6. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim first made against the Insured during the Policy Period or during the Extended Reporting Period, if exercised, or within sixty (60) days after the expiration date of the Policy Period or Extended Reporting Period, if exercised, by reason of:

    1.    a Wrongful Act; or

    2.    a Personal Injury;

in the performance of Professional Services rendered or that should have been rendered by the Insured or by any person or organization for whose Wrongful Act or Personal Injury the Insured is legally responsible; provided:

    (i)    the Wrongful Act or Personal Injury happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations and before the end of the Policy Period; and

(ii)    prior to the effective date of this policy the Insured had no knowledge of such Wrongful Act or Personal Injury or any fact, circumstance, situation or incident which may have led a reasonable person in the Insured's position to conclude that a Claim was likely.[22]

The Evanston policy also contains the following exclusion from coverage:

THE EXCLUSIONS
This policy does not apply to any Claim:
                                  …
L.      **based upon, arising out of, or in any way involving** any actual or alleged bodily injury, sickness, disease or death of any person, or **damage to or destruction of any tangible property including loss of use resulting therefrom.**[23]

The Fifth Circuit has found that an insurer's duty to defend suits on behalf of an insured presents a separate and distinct inquiry from that of the insurer's duty to indemnify a covered claim. Martco Ltd. P'ship v. Wellons, Inc., 588 F.3d 864, 872 (5th Cir. 2009)(citing Elliott v. Cont'l Cas. Co., 949 So. 2d 1247, 1250 (La. 2007)). The Fifth Circuit noted that while factual inquiries beyond the complaint are prohibited with respect to the duty to defend, they are necessary in assessing the duty to indemnify. Id.  Considering this, the Court will address the duty to defend and the duty to indemnify separately below.

**A.      Duty To Defend**

Under Louisiana law, an insurer has a duty to defend its insured unless the allegations in the complaint unambiguously exclude coverage. Alert Ctr., Inc. v. Alarm Prot. Serv., Inc., 967 F.2d 161, 163 (5th Cir. 1992)(citations omitted). Coverage is determined

---

[22]Record Document 87-2, Ex. 1.

[23]Record Document 87-2, Ex. 1 (emphasis added).

Page 7

by comparing the allegations in the complaint with the terms of the policy, and a court must only look at the face of the complaint and the insurance contract to determine if there is coverage. Id. (citations omitted). If the complaint indicates that there is a possibility of liability under the policy, then an insurer has a duty to defend its insured. Id.  If the complaint alleges a single claim against the insured that is covered by the policy, then the insurer must defend the entire suit, even if other claims are clearly excluded from coverage. Id. (citations omitted). To prevail, an insurer must show that the allegations in the complaint unambiguously fall within one of the exclusionary clauses. Martco Ltd., 588 F.3d at 872.

Forest Oil's opposition to Evanston's motion for summary judgment does not dispute Evanston's argument that Evanston has no duty to defend Arklatex.[24] St. Paul does not make a distinction between Evanston's duty to defend and duty to indemnify, and instead, it simply argues that to the extent that Forest Oil seeks recovery for economic losses not arising out of property damage, Evanston's policy should provide coverage.[25]

As described above, the Evanston policy provides coverage for any wrongful act or personal injury, with the exception of any claim **"based upon, arising out of, or in any way involving** ... damage to or destruction of any tangible property **including loss of**

---

[24]Record Document 91, pp. 1-3.

[25]Id. at p. 2.

**use resulting therefrom**."[26] The parties have supplied the Court with Forest Oil's third-party demand in the state court suit, which alleges the following damages:

(1)   Additional costs incurred in the drilling and completion of the [Madden 20 well] as a result of the collision;

(2)   Diagnostic work incurred on the [Madden 17 well] as a result of the collision; and

(3)   The estimated costs to repair the [Madden 17 well] and return it to production.[27]

Additionally, Forest Oil seeks damages in any "amounts for which it may be cast in judgment to the [Maddens] in the principal demand and all damages which may result from a judicial cancellation of the Surface Lease, and/or the subject oil, gas and mineral lease."[28]

Evanston argues that its policy does not cover any of Forest Oil's claims because they are all either property damage or loss of use or claims that arise out of property damage or loss of use.[29] Evanston refers this Court to the holding in In re Katrina Canal Breaches Consol. Litig., No. 05-4182, 2008 WL 4091033, at *8 (E.D. La. Aug. 26, 2008). In that case, the district court was presented with language identical to that of the Evanston policy and found that the damages sought, including loss of business opportunities, loss of income, relocation costs, societal harm, loss of cultural heritage, and loss of opportunity, all arose out of the personal injury or property damage caused by the breach of the floodwalls

---

[26]Record Document 1-1 (emphasis added).

[27]Record Document 87-3, Ex. 3 (emphasis added).

[28]Id.

[29]Record Document 110, p. 3.

around the city of New Orleans. Id.  Similarly, in <u>Chicago Prop. Interests, L.L.C. v.</u> <u>Broussard</u>, the court found that, under an insurance policy that has language similar to the Evanston policy, increased living expenses, extended displacement costs, loss of income, lost profits, lost business opportunities and inconvenience were all excluded from coverage. No. 08-CA-526 (La. App. 5 Cir. 1/13/09); 8 So. 3d 42, 46-47. The court found that all of the above damages directly or indirectly had their origin in property damage, namely the harm suffered by the plaintiffs based on the passage of Hurricane Katrina. Id.

    In the present case, this Court must examine the counterclaim filed by Forest Oil against Arklatex and then assess whether the damages listed therein are covered by the Evanston policy. The first two claims against Arklatex are for the additional costs for drilling and completing the Madden 20 well and for diagnostic work on the Madden 17 well. St. Paul argues that the first claim is not property damage or loss of use arising from the collision of the two wells because Forest Oil would have been required to complete the Madden 20 well despite the collision.[30] The Court finds this argument unpersuasive.

    The costs of drilling and completing the Madden 20 well and the cost of the diagnostic work on the Madden 17 well are both claims that are based upon the destruction of the tangible property, i.e. the destruction of the Madden 20 well and the Madden 17 well. Here, if the collision between the two wells had not happened, the additional costs of drilling and completing the Madden 20 well and costs associated with diagnosing the Madden 17 well would not have occurred. The Evanston policy excludes coverage "in any

---

[30]Record Document 90, p. 3.

way involving" damage to or destruction of any tangible property, and the first two claims for damages involve the damage to the two wells.[31] Considering this, the Court finds that Forest Oil's two claims for damages are based upon, arise out of, and involve the destruction of the two wells, and therefore, are unambiguously excluded under Exclusion L of the Evanston policy.

Forest Oil's third claim for damages covers the estimated costs to repair the Madden 17 well and return it to production. This claim for damages very clearly involves damage to tangible property, namely the damage to the Madden 17 well caused by the collision. This third claim for damages also unambiguously falls within Exclusion L of the Evanston policy.

Finally, Forest Oil seeks damages for amounts for which it may be cast in judgment to the Maddens in the principal demand and all damages which may result from a judicial cancellation of the surface lease and the subject lease. The principal demand made by the Maddens against Forest Oil in the state court suit seeks damages in the form of the cancellation of the subject lease, the removal of the Madden 20 well from their property, compensation for damage caused by the destruction of the Madden 17 well, the "civil fruits" owed to the Maddens due to the collision, and attorney's fees and costs.[32]

---

[31]The Court also notes that the complaint filed by Forest Oil specifically states that the first two claims for damages are "a result of the collision." Record Document 87-4, p. 3.

[32]Record Document 87-3, Exhibit 2.

The declaratory Defendants argue that the above claims are not "property damage" and, instead, are for economic losses that do not arise out of property damage.[33] The court in In re Katrina Canal Breaches noted that the exclusionary language at issue in the present case "certainly greatly restricts the coverage provided under this policy of insurance." 2008 WL 4091033 at *8. There, the court found economic damages such as societal harm, loss of cultural heritage, evacuation expenses, and business interruption to be excluded under the insurance policy because they arose out of damage to physical property or the loss of use therefrom. Id. Similarly, the court in Chicago Prop. Interests noted the "broad scope" of the "arising out of" language at issue in that case. 8 So. 3d at 47. That court elaborated on the broad nature of a similar policy exclusion by stating that, "[f]or example, if a putative plaintiff suffered increased living expenses or displacement costs, it was because his or her property was directly or indirectly damaged in the flood that followed Hurricane Katrina," and thus would be excluded under that policy. 8 So. 3d at 47.

Here, Arklatex argues that the damages sought by the Maddens and Forest Oil are for costs, work and other damages, including economic damages. Arklatex is correct in this assertion. However, the economic damages sought in the principal demand are all economic costs that arise out of or involve the collision of the two wells or the loss of use of the two

---

[33]St. Paul's opposition to the motion for summary judgment states that it does not oppose Evanston's motion to the extent it seeks a ruling that the Evanston policy does not provide coverage for property damage or the resulting loss of use of that property. Record Document 90, p. 3.  Arklatex argues in its opposition to the motion for summary judgment that the damages sought by Forest Oil are not for property damages but are for costs, work, and other damages, which would be covered under the policy. Record Document 109, p. 3.

wells. As held by the court in <u>In re Katrina Canal Breaches</u>, the broad exclusion in that case, which is identical to Exclusion L, was found to exclude many claims, including solely economic damages. The damages sought by the Maddens and Forest Oil are not as remote from the damage to physical property as those sought in <u>In re Katrina Canal Breaches</u>, and this Court believes that they involve the tangible property damage to the two wells or the loss of use of the two wells due to the collision. Therefore, the Court finds that the above-described economic damages fall under Exclusion L of the Evanston policy.

In sum, the Court finds that the Evanston policy excludes coverage for all of the losses enunciated by Forest Oil and the Maddens in their complaints against Arklatex. Therefore, the Court finds that Evanston has no duty to defend Arklatex in the state court suit, and Evanston's motion for summary judgment insofar as it relates to its duty to defend Arklatex is **GRANTED**.

## B.    Duty To Indemnify

Forest Oil and Arklatex argue that Evanston's motion for summary judgment on its duty to indemnify Arklatex is premature because unlike a duty to defend, which is based solely on the insurance policy and the complaint, the determination of an insurer's duty to indemnify an insured must take into account all relevant evidence, including evidence that may be presented at the trial of the underlying dispute.[34]

---

[34]Record Document 91, p. 5. As stated above, St. Paul's opposition to the motion for summary judgment does not distinguish between a duty to indemnify and a duty to defend, and St. Paul simply makes the argument that any damages that are not property damages or resulting loss of use of the property should be covered under the Evanston policy. Record Document 90, p. 3.

Evanston urges the Court to decide the issue of coverage before the state court suit determines liability.[35] Directing the Court to the holdings in In re Katrina Canal Breaches, 495 F.3d 191, 206 (5th Cir. 2007), Burmaster v. Plaquemines Parish Gov't, No. 2010-CA-1543 (La. App. 4th Cir. 3/30/11); 64 So. 3d 312, Chicago Prop. Interests, 8 So. 3d at 42, and Winesberry v. Bd. of Comm'r of W. Jefferson Levee Dist., 620 So. 2d 385 (La. App. 5th Cir. 1993), Evanston argues that when the insurance policy excludes all of the damages sought by the plaintiff, a court should rule that there is no duty to indemnify under the policy.[36]

In the present case, the Evanston policy is not illusory. Although the policy is very narrowly written, it does provide coverage, under certain circumstances, for wrongful acts such as libel and slander. However, the Court cannot conceive of an example in which the Evanston policy would provide coverage to the facts at hand. Although Forest Oil and Arklatex have argued that a determination of the duty to indemnify is premature, they, too, have been unable to provide the Court with a salient example of evidence that could be presented during the state court proceeding that would result in coverage under the Evanston policy.

As the case law provided by Evanston indicates, in certain circumstances, courts are able to determine that there can be no coverage for damages under a policy, even at an early stage of the litigation. The Court finds this is such a case. Therefore, the Court holds

---

[35]Record Document 87, p. 6.

[36]Record Document 110, p. 7 and Record Document 109, p. 4.

that the narrowly-written Evanston policy provides no coverage for the damages allegedly suffered by the state court plaintiffs, and Evanston's motion for summary judgment as to its duty to indemnify Arklatex is **GRANTED**.

## IV.    Conclusion

For the reasons given above, the Court rules that Evanston's Motion for Summary Judgment [Record Document 87] is **GRANTED**.

A judgment consistent with the instant memorandum ruling shall issue herewith.

**THUS DONE AND SIGNED** on this 10th day of August, 2015.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE